UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONYELL G. JOHNSON,

       Plaintiff,

v.                                  Case No. 1:07-cv-77
                                  HON. JANET T. NEFF

T. STEWART, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Donyell G. Johnson filed this prisoner 42 U.S.C. § 1983 action asserting claims arising out of his incarceration at the Muskegon Temporary Facility (MTF) against Inspector T. Stewart, RUO Loss, RUM Bowman, D. Alexander, Warden Mary Berghuis and Patricia L. Caruso. Defendants Alexander and Berghuis have been dismissed by the court. Plaintiff's Due Process and Eighth Amendment claims have been dismissed. The remaining claim is a First Amendment claim against Defendants Stewart, Loss, Bowman and Caruso.

Plaintiff alleges that on August 11, 2006, he received a rejection notice from the prison mail room regarding two issues of the "Five Percenter" newspaper that were mailed to him pursuant to a subscription. The notice stated that the newspapers contained gang signs. On August 15, 2006, Defendant Bowman conducted an administrative hearing concerning the newspapers. Plaintiff disputed the existence of gang signs in the newspapers and complained that the purported gang signs should have been removed and the rest of the newspaper forwarded to Plaintiff. Bowman told Plaintiff that he had never heard of the newspaper and would have to review

it before making a decision.  Two days later, on August 17, 2006, Plaintiff met with Defendant Stewart regarding the newspapers.  Stewart informed Plaintiff that the newspapers had been sent to Lansing for a determination whether they were associated with a Security Threat Group (STG). Stewart also1asked Plaintiff to sign an STG renunciation form.  Plaintiff refused to sign the form because it "did not have anything to do with him."  As a result of his refusal, Stewart ordered Defendant Loss to search Plaintiff's cell.  Loss confiscated some of Plaintiff's literature, including: The Breakdown to The Universal Flag of The Nation of Gods and Earths, passport information, copyright notice and an African Studies packet.  Also as a result of his refusal to sign the renunciation form, Plaintiff was designated an STG I member and transferred from MTF, a security level I facility, to LRF, a security level II facility.  Plaintiff asserts violations of his First and Eighth Amendment rights.  He also contends that Defendants designated him an STG member and transferred him to LRF in retaliation for exercising his First Amendment rights.  Plaintiff seeks declaratory relief and monetary damages.

　　　　　Defendants have moved for summary judgment.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered

by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that his First Amendment rights were violated by the confiscation of his Five Percenter Newspaper and by labeling him an STG member because he refused to sign a renunciation form. The standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact

- 3 -

accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90.  Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90.  As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id*. at 90.  "Prison officials need not show that no reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

Plaintiff claims that his mail was improperly rejected as an STG threat in violation of his First Amendment rights.  Although there is no question that the First Amendment applies to a prisoner's receipt of incoming mail, the right is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993).  The Supreme court held that "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 342 (1987).  In *Lavado v. Kehohane*, the Court held that "prison" officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security."  992 F.2d 601, 607 (1993).

The material relating to the Five Percenters is considered part of the STG Nation of Gods and Earth.  The Five Percenter publication is on the Restricted Publication List because of its connection with the STG.  It contains threat group symbols and signs and articles which advocate racial supremacy.  Nation of Gods and Five Percenters were first listed as an STG in 2001 and continue that status today.  Defendants argue that an STG by definition poses a threat to the safety of staff, other prisoners, and the safety and order of the facility and, therefore, a prohibition on mail containing STG-related material is reasonably related to the legitimate penological goal of

- 4 -

maintaining order and security.  MDOC Policy Directive 04.04.113(A).  The purpose of identifying a prisoner as an STG member is to proactively manage the emerging problem of STGs and to assist in the prevention of violence.  MDOC Policy Directive 04.04.113(B) and (C).

In general, the MDOC's accommodation of STGs is neither practical nor reasonable.  Plaintiff is free to exercise his religious beliefs, if that is at issue, in other ways.  In addition, Defendants point out that the MDOC policy governing contraband mail is neutral and evenhanded as required by *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) since it applies to all inmates and all STG-related material.  *Id.* at 607.  Thus, it is clear that there is a valid, rational connection between Plaintiff's designation as an STG member and institutional safety, and that such a designation is reasonable.  *Turner*, 482 U.S. at 90.  As noted above, any First Amendment rights retained by prisoners upon incarceration must yield to "the legitimate penological objectives of the corrections system," such as order, security, or rehabilitation.  *Turner*, 482 U.S. at 89.  Therefore, in the opinion of the undersigned, Defendants have met their burden with regard to Plaintiff's First Amendment censorship claims.  Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to those claims.

Plaintiff alleges that he was designated an STG in retaliation for refusing to renounce his involvement in the STG group.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial

or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). It is clear that Plaintiff received the STG designation because of his involvement with the STG. Plaintiff can make no showing that his STG designation was retaliatory.

Moreover, in the opinion of the undersigned, Defendants are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in

question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the

unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City*

*of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light

most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely

disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there

is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This

would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

than the plaintiff because it is not for the court to make credibility determinations at this stage of the

proceeding."  *Id.*

The operation of the qualified immunity standard depends substantially upon the level

of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.
> This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held
> unlawful, but it is to say that in light of the preexisting law the
> unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert.*

*denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been
> authoritatively decided by the United States Supreme Court, the Court
> of Appeals, or the highest court of the state in which the alleged
> constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, Defendants are

entitled to qualified immunity because Plaintiff has failed to show a violation of his constitutional rights.

Accordingly, it is recommended that Defendants' motion for summary judgment (Docket #32) be granted and this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 11, 2008